IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>GARLAND BRANCH OF NAACP,<br><br>    Intervenor,<br><br>v.<br><br>GARLAND INDEPENDENT SCHOOL DISTRICT,<br><br>    Defendant. | Civil Action No. 3:70-CV-04100-K |

**MOTION FOR DECLARATION OF UNITARY STATUS AND DISMISSAL**

The United States, as plaintiff in this 55-year-old school desegregation case against the Garland Independent School District (Garland ISD), respectfully moves the Court for a declaration of unitary status and to withdraw its supervision of Garland ISD and dismiss this case, for the following reasons:

### I.   Background

This school desegregation case dates from 1970 and was initially resolved via an order filed in September of that year, in which the Court adopted certain provisions for the operation of a unified, non-discriminatory school system in Garland ISD. Among other things, the 1970 order required the closure of the district's segregated, all-black George Washington Carver School; allowed for a "freedom of choice" plan under which

students at Carver could select any elementary school in the district; eliminated the use of racial criteria in staff assignments; and created a Court-appointed "Bi-Racial Committee" composed of "five white and five black" members. *See* Order (Sept. 10, 1970).

The demographics of Garland ISD have changed dramatically over the years. As of 1987, the Garland Branch of the NAACP had intervened in the case and the Court issued an agreed judgment that, among other things, provided for the establishment of gifted/talented magnet schools and specified that by the 1989–90 school year, "no school in the District shall have an Anglo student population that is more than twenty percentage points above or below the percent of the Anglo student population in the District as a whole," not counting pre-kindergarten classes. *See* Agreed Judgment (July 14, 1987).

Next, in 1994, the Court—apparently taking stock of the still-evolving demographics of the district—modified what formerly had been known as the "Bi-Racial Committee" by transforming it into a "Multi-Ethnic Committee" consisting of "five (5) White or Anglo members, three (3) Black members, three (3) Hispanic members, and one (1) Oriental/Asian member." *See* Order (Nov. 1, 1994). Garland ISD has since been required to file various matters on the Court's docket over time relating to the "Multi-Ethnic Committee," including to obtain the Court's approval of the committee's members. (*See, e.g.*, Doc. 81 at 2 (motion requesting the Court's approval for the proposed appointment of one person as a "Hispanic" member of the committee and another as an "African-American" member).)

In addition, through the present, Garland ISD has been required to file periodic reports with the Court about the demographic make-up of its schools. The most recent

such report, filed on December 15, 2025, provides detailed information about the current demographics of the district's various schools and the district as a whole.  This report explains that as of December 11, 2025, "that there were 50,930 students in the" district's database, and that of this number, "6,533 (12.83%) are White; 8,983 (17.64%) are African American; 28,171 (55.31%) are Hispanic; 5,249 (10.31%) are Asian; 213 (0.42%) are American Indian; 56 (0.11%) are Pacific Islander; and 1,725 (3.39%) are two or more races or ethnicities."  (Doc. 94 at 7.)  In addition, "Anglo enrollment on a school-by-school basis ranges from a low of 1.12% at Bullock Elementary School to a high of 35.81% at Keeley Elementary School."  (*Id.*)

## II.    Argument and Authorities

On the basis of the most recent report filed by Garland ISD, as well as the record of this case as a whole including the myriad other reports and materials that have been submitted to the Court over the past many decades, the United States moves for a declaration of unitary status and for the withdrawal of the Court's supervision over Garland ISD and a dismissal of this 55-year old case.  A declaration of unitary status is appropriate when the record shows that the school district "has (1) 'complied in good faith with desegregation orders' for a period of at least three years and (2) 'eliminated the vestiges of prior *de jure* segregation to the extent practicable.'"  *Borel ex rel. AL v. Sch. Bd. of St. Martin Parish*, 44 F.4th 307, 314 (5th Cir. 2022) (quoting *Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 297 (5th Cir. 2008)).

Here, there can be no question of Garland ISD's compliance with this Court's desegregation decrees and its elimination of the vestiges of *de jure* segregation.  Garland

ISD eliminated its system of formal segregation many years ago, including by doing away with the former segregated Carver school, and the demographic composition of its schools today—with no school having a percentage of white students greater than 36%, according to the district's latest report—indicates that there are also no remaining vestiges of any former discriminatory policies.

The demographics of Garland ISD have also changed dramatically since the time when racial discrimination against blacks was practiced and the Court's remedy for that was, among other things, to create a 50/50 "Bi-Racial Committee" of black and white representatives. Some 12 years ago, for example, the Dallas Morning News reported that Garland ISD had "the nation's oldest school choice desegregation plan," but that the district's Hispanic enrollment had surpassed 50% and that the use of "ethnicity bands" based on the decades-old lawsuit was awkward. *See* Garland ISD's Changing Demographics Test Desegregation Plan, Dallas Morning News (July 19, 2013), *available at* https://www.dallasnews.com/news/2013/07/20/garland-isds-changing-demographics-test-desegregation-plan/ (accessed Dec. 15, 2025).

The same is true today, but even more so. For example, although white enrollment in Garland ISD had been at 76.2% in 1987, it was only 22.1% by 2013, *see id.*, and as noted above, it now stands at under 13%.[1] Clearly, then, the conditions that initially prompted this Court to intervene in the district's affairs to remedy a pattern of

---

[1] The fact that district-wide white enrollment is now approximately 13% highlights the outdated nature of any "ethnicity band" requiring each individual school to have a white population no more than 20 percentage points below or above this figure—application of this "ethnicity band" now contemplates the mathematical impossibility of having a white enrollment of a low as -7% at any particular school.

**Motion for Declaration of Unitary Status and Dismissal – Page 4**

discrimination against black students by an overwhelmingly white district—at a time when a "Bi-Racial Committee" of only black and white members was thought necessary, presumably because there were very few Hispanic or Asian students in the district—have dissipated and changed in a way that no longer mandate or justify this Court's ongoing supervision. The ongoing requirement that the district file periodic reports detailing the ethnicity of its students (using categories like "Hispanic," "White," "Asian," or "Black") likewise is a relic of a different era and no longer serves any purpose relevant to the goal of abolishing a prior system of unlawful *de jure* discrimination in the district. As the Supreme Court recently explained, such "categories are themselves imprecise in many ways. Some of them are plainly overbroad: by grouping together all Asian students, for instance, respondents are apparently uninterested in whether South Asian or East Asian students are adequately represented, so long as there is enough of one to compensate for a lack of the other. Meanwhile other racial categories, such as 'Hispanic,' are arbitrary or undefined. And still other categories are underinclusive." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Univ.*, 600 U.S. 181, 216 (2023) (citation omitted).

"From the very first, federal supervision of local school systems was intended as a *temporary* measure to remedy past discrimination." *Bd. of Educ. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 247 (1991) (emphasis added). Put another way, desegregation decrees "are not intended to operate in perpetuity." *Id.* at 248. This is the case partly because "[n]o single tradition in public education is more deeply rooted than local control over the operation of schools," *Milliken v. Bradley*, 418 U.S. 717, 741

**Motion for Declaration of Unitary Status and Dismissal – Page 5**

(1974), and also because it was never the purpose of the federal courts' desegregation jurisprudence to "condemn a school district, once governed by a board which intentionally discriminated, to judicial tutelage for the indefinite future," *Dowell*, 498 U.S. at 249.

Because Garland ISD has complied with this Court's prior orders by eliminating both *de jure* discrimination as well as any of its vestiges, the United States moves the Court to declare that unitary status had been achieved, withdraw its supervision of the district, and dismiss this case.

Respectfully submitted,

Ryan Raybould
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for the United States

Certificate of Conference

I have conferred with counsel of record for Garland ISD about this motion, and have been informed that after the motion is filed, counsel will confer with the school board to obtain the district's position on the motion. Because intervenor Garland Branch of the NAACP appears to no longer be represented by counsel (prior counsel is deceased), I have not been able to confer with it.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

Certificate of Service

On December 16, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties with active appearances of counsel in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2). For the Garland Branch of the NAACP, which appears to no longer be represented by counsel, I have mailed a copy of this motion to that organization at P.O. Box 460944, Garland, TX 75046 (which is the address listed on the organization's website for mail—*see* https://garlandtxnaacp.org/contact-us/).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney